IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-02442-MSK-MJW

JOE WALLACE PEEPLES III,

Plaintiff(s),

v.

CO DIAZ DEL CAMPO,
CO DOLLARD, and
WARDEN GARCIA,

Defendant(s).

---

### RECOMMENDATION ON
### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Docket No. 22),
### DEFENDANTS' MOTION TO DISMISS (Docket No. 23), and
### DEFENDANTS' AMENDED MOTION FOR SUMMARY JUDGMENT (Docket No. 36)

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

This case is before the undersigned pursuant to an Order Referring Case issued

by Chief Judge Marcia S. Krieger on September 20, 2014 (Docket No. 13).

**PLAINTIFF'S ALLEGATIONS**

This action is brought pursuant to 18 U.S.C. § 1331 and Bivens v. Six Unknown

Named Agents of Fed. Bur. of Narcotics, 403 U.S. 388 (1971).  The pro se incarcerated

plaintiff, Joe Wallace Peeples III, alleges the following in his Prisoner Complaint (Docket

No. 1).  While serving pretrial and post-sentence time in the FCI Englewood Special

Housing Unit ("SHU"), he was the victim of sexual assault and battery by more than one

correction officer.  The supervising Warden and ranking correction officers were notified,

2

but nothing was done to prevent further sexual abuse, nor was plaintiff made part of any

local investigation in a reasonable time frame.  In fact, there was a cover up from the

very beginning, starting with the theft of plaintiff's U.S. Mail addressed to the Sexual

Abuse Unit at the Office of the Inspector General ("OIG").  In addition, plaintiff was

separated from another victim, Sanchez, while his complaint was investigated, and as a

result of the investigation, Sanchez was moved out of the facility.    While being moved

to recreation/shower on an unspecified date, defendant CO Diaz Del Campo squeezed

plaintiff's butt and inserted his finger in the crack between plaintiff's cheeks, but not in

his rectum.  When plaintiff turned away and responded, "what the fuck," Del Campo

said, "shut up Rape PO I know what you did in 96 . . . I'm going to get you."  Since

plaintiff had a rape charge dismissed in 1996, and that was what Del Campo was

referring to within earshot of other inmates, plaintiff was reluctant to "go any further" in

fear of being exposed in front of his peers.  Defendant CO Dollard was a "contributor" to

this abuse because he was the number one officer and would accompany Del Campo

on the tier.  Dollard would say things to plaintiff like, "I wonder if you can gang rape a

gangster."  Although most of his comments and sexual innuendoes were directed at

inmate Sanchez, Dollard created a sexually abusive environment.

A few days after that incident, plaintiff was moved away from D tier where

Sanchez and plaintiff had been verbally expressing their situations with Dollard and had

requested to see the Warden.  Plaintiff and Sanchez both mailed letters to Special

Investigative Services ("SIS") and to the Warden that night.  Soon after, plaintiff was

moved downstairs to the B range.  The next day, plaintiff could hear D tier inmates

being called into a room to give testimony regarding what he had hoped were their

allegations.  The next day, plaintiff learned that Sanchez was moved out of the facility

for speaking out about sexual abuse.

Plaintiff began to receive verbal threats and constant cell searches.  Plaintiff

never heard anything back from the OIG.  Plaintiff's mail was being stolen at FCI

Englewood because he continued to write to the OIG with no response.  Plaintiff was

eventually released from the SHU back to the Federal Detention Center at Englewood

where plaintiff continued to write to the OIG, to no avail.  Plaintiff then contacted the SIS

about his mail possibly being stolen.  Plaintiff was mysteriously hauled off back to the

SHU for a "fruit and red liquid" found in an "unoccupied locker," a charge which was

dismissed months later.  Plaintiff was placed back on D range where Del Campo and

Dollard were working, and Del Campo immediately began to make his distaste and

anger known to plaintiff by his comments and demeanor.  On shower days Del Campo

would try to position himself so that he could grab plaintiff, but plaintiff would "fake and

step back," and his cellmate would go.  Del Campo then began coming to plaintiff's cell

and saying loudly, "I know what you did in 96 and I'm going to get you."  Plaintiff was

afraid for his safety.  The next day, Del Campo cuffed plaintiff and put his finger down

the crack of his buttocks on the way to the shower.  Plaintiff immediately lashed out at

him and was later given an incident report for threatening him, which was later

dismissed.

Plaintiff wrote to the OIG that night and included an affidavit by his cellmate

David Figuroa as to what he saw and heard Del Campo say to plaintiff.  Non-party CO

Martel was responsible for the next day's mail.  The next morning, Figuroa was

awakened for a court trip he knew nothing about, and which ended up being a "dry run"

because he did not have court.  Plaintiff was informed by CO Tucker that plaintiff had to send all of his property home, and he would not be returning.  Plaintiff had purchased hundreds of dollars of commissary and clothes, but he complied under protest and has no idea where his property is.

The next day, plaintiff was transferred to Oklahoma Federal Transfer Center in Oklahoma City where during his intake evaluation he immediately informed staff that he had been the victim of continuous sexual assault while at FCI Englewood, most recently the previous day.  Plaintiff was allowed to speak only with psychology personnel Ms. Watson for one minute and was then sent to general population.

The next morning, plaintiff was awakened by OKC Transfer Center staff and escorted to the SHU without explanation.  After spending a week there, without any further investigation or exam, plaintiff was put on a plane by the U.S. Marshal and delivered to Corrections Corporation of American in Youngstown, Ohio.  About two weeks later, he was called into an interview room where two investigators said SIS at Englewood received an anonymous tip that he had been sexually assaulted, and they needed to take a statement.  Plaintiff gave a 20-page statement but has not heard anything further.

Defendant Warden Garcia covered this up and did not conduct a proper investigation.

Attached to the Complaint are two pages of "Supporting Facts" (Docket No. 1 at 14-15) in which plaintiff details allegations concerning the handling of his legal papers in May 2013 during his transport by the US Sky Marshal through the Pittsburgh airport to Oklahoma and his subsequent grievance concerning the events.  Inasmuch as plaintiff

5

does not make reference to any of the named defendants in this recitation of "Supporting Facts," these allegations are not detailed here.  Plaintiff does claim in these "Supporting Facts" that he noticed that "every copy of every paper I had concerning my SEXUAL ASSULT [sic] BY STAFF AT FCI ENGLEWOOD was missing. Including dates, times, officers names, witnesses names and contact information was <u>GONE</u>."  (Docket No. 1 at 15).  He claims this was part of a cover up for the alleged sexual assault. (Docket No. 1 at 15).

Plaintiff seeks $1 million plus punitive damages as well as injunctive relief, to include protection from Del Campo's threats.

<u>**DEFENDANTS' MOTIONS**</u>

Now before the court for a report and recommendation are the defendants' two dispositive motions which were filed on the same day: (1) Defendants' Motion for Summary Judgment (Docket No. 22) and (2) Defendants' Motion to Dismiss (Docket No. 23).  Plaintiff filed one two-page response (Docket No. 29).  Thereafter defendants filed an Amended Motion for Summary Judgment (Docket No. 36) because incorrect administrative remedy records were attached to one of the Declarations filed with the original motion for summary judgment (Docket No. 22-1).  The amended motion (Docket No. 36) has an amended declaration that references and includes the administrative remedy records for plaintiff through June 23, 2014.  Plaintiff has not filed a response to the amended motion (Docket No. 36).  The court has considered all of these motions papers as well as applicable Federal Rules of Civil Procedure and case law.  In addition, the court has taken judicial notice of the court file.  The court now being fully informed makes the following findings, conclusions of law, and recommendations.

6

Rule 56(a) provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the absence of genuine issues for trial."  Robertson v. Board of County Comm'rs of the County of Morgan, 78 F. Supp.2d 1142, 1146 (D. Colo. 1999) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Mares v. ConAgra Poultry Co., 971 F.2d 492, 494 (10th Cir. 1992)).  "Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in the complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. . . .  These facts may be shown 'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings by themselves.'"  Southway v. Central Bank of Nigeria, 149 F. Supp.2d 1268, 1273 (D. Colo. 2001), aff'd, 328 F.3d 1267 (10th Cir. 2003).

"Summary judgment is also appropriate when the court concludes that no reasonable juror could find for the non-moving party based on the evidence presented in the motion and response."  Id.  "The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. . . .  Unsupported allegations without 'any significant probative evidence tending to support the complaint' are insufficient . . . as are conclusory assertions that factual disputes exist."  Id.; Robertson, 78 F. Supp.2d at 1146 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); quoting White v.

York Int'l Corp., 45 F.3d 357, 360 (10th Cir. 1995)).  "Evidence presented must be

based on more than 'mere speculation, conjecture, or surmise' to defeat a motion for

summary judgment."  Southway, 149 F. Supp.2d at 1274.  "Summary judgment should

not enter if, viewing the evidence in a light most favorable to the non-moving party and

drawing all reasonable inferences in that party's favor, a reasonable jury could return a

verdict for that party."  Id. at 1273.

Under Rule 8(a)(2), a pleading must contain "a short and plain statement of the

claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A motion to

dismiss pursuant to Rule 12(b)(6) alleges that the complaint fails "to state a claim upon

which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "A complaint must be dismissed

pursuant to Fed. R. Civ. P. 12(b)(6) if it does not plead 'enough facts to state a claim to

relief that is plausible on its face.'"  Cutter v. RailAmerica, Inc., 2008 WL 163016, at *2

(D. Colo. Jan. 15, 2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127

S. Ct. 1955, 1974 (2007)).  "While a complaint attacked by a Rule 12(b)(6) motion to

dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide

the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and

a formulaic recitation of the elements of a cause of action will not do . . . ."  Bell Atlantic

Corp., 550 U.S. at 555 (citations omitted).  "Factual allegations must be enough to raise

a right to relief above the speculative level."  Id.  "[A] plaintiff must 'nudge [] [his] claims

across the line from conceivable to plausible' in order to survive a motion to dismiss. . . .

Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts

in support of the pleaded claims is insufficient; the complaint must give the court reason

to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for

*these* claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting Bell Atlantic Corp., 127 S. Ct. at 1974).

The Tenth Circuit Court of Appeals has held "that plausibility refers 'to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" Khalik v. United Air Lines, 671 F.3d 1188, 1191 (10th Cir. 2012). The Circuit court has further "noted that '[t]he nature and specificity of the allegations required to state a plausible claim will vary based on context.'" Id. The court thus "concluded the *Twombly/Iqbal* standard is 'a wide middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the Court stated will not do.'" Id.

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pled factual allegations in the complaint as true and resolve all reasonable inferences in the plaintiff's favor. Morse v. Regents of the Univ. of Colo., 154 F.3d 1124, 1126-27 (10th Cir. 1998); Seamons v. Snow, 84 F.3d 1226, 1231-32 (10th Cir. 1996). However, "when legal conclusions are involved in the complaint 'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to [those] conclusions' . . . ." Khalik, 671 F.3d at 1190 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009)). "Accordingly, in examining a complaint under Rule 12(b)(6), [the court] will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." Id. at 1191.

9

Since the plaintiff is not an attorney, his pleading and other papers have been construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers.  See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972)).  Therefore, "if the court can reasonably read the pleadings to state a claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements. . . . At the same time, . . . it is [not] the proper function of the district court to assume the role of advocate for the pro se litigant."  Id.

**Motion for Summary Judgment.**   In their Amended Motion for Summary Judgment (Docket No. 36), brought pursuant to Fed. R. Civ. P. 56, defendants seek summary judgment because plaintiff did not exhaust his administrative remedies prior to filing suit.  The Prison Litigation Reform Act of 1995 ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies are available are exhausted."  42 U.S.C. § 1997e(a). The PLRA requires exhaustion as a "precondition" to bringing litigation and requires dismissal where a litigant has failed to complete exhaustion before initiating a suit.  See Fitzgerald v. Corrections Corp. of Am., 403 F.3d 1134, 1140-41 (10th Cir. 2005).  This exhaustion requirement "is mandatory, and the district court [is] not authorized to dispense with it."  Beaudry v. Corrections Corp. of Am., 331 F.3d 1164, 1167 n.5 (10th Cir. 2003).  Section "1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences."  Porter v. Nussle, 534 U.S. 516, 520

10

(2002).  The "failure to exhaust is an affirmative defense under the PLRA, and . . .

inmates are not required to specially plead or demonstrate exhaustion in their

complaints." <u>Jones v. Bock</u>, 549 U.S. 199, 216 (2007).  As an affirmative defense, "the

burden of proof for the exhaustion of administrative remedies in a suit governed by the

PLRA lies with the defendant."  <u>Roberts v. Barreras</u>, 484 F.3d 1236, 1241 (10th Cir.

2007).

The Bureau of Prisons ("BOP") has a four-step administrative procedure for

prisoner grievances codified at 28 C.F.R. §§ 542.10 - 542.19.  First, the prisoner is

required to seek informal resolution of his complaint with prison staff.  28 C.F.R. §

542.13.  If the prisoner does not obtain a satisfactory result, he must then address his

complaint through a formal written Request for Administrative Remedy on a "BP-9"

form.  28 C.F.R. §§ 542.13, 542.14.  If the prisoner is dissatisfied with the response to

his BP-9, the prisoner must then submit a Regional Office Administrative Remedy

Appeal to the appropriate Regional Director on a "BP-10" form.  28 C.F.R. § 542.15(a).

This BP-10 form must be submitted to the Regional Director no later than "20 calendar

days of the date the Warden signed the response," but extensions may granted.  28

C.F.R. § 542.15(a).  If dissatisfied with the Regional Director's response, the prisoner

must then submit a Central Office Administrative Remedy Appeal with the National

Inmate Appeals Administrator in the in the Office of the General Counsel in Washington,

D.C., on a "BP-11" form.  <u>See</u> 28 C.F.R. § 542.15.  That form must be submitted no

later than "30 calendar days of the date the Regional Director signed the response," but

extensions may be granted.  28 C.F.R. § 542.15(a).  The appeal to the General Counsel

in the Central Office is the final step of the administrative remedy process through the

11

BOP.  28 C.F.R. § 542.15(a).

There are special circumstances exceptions to the initial filing of a remedy request at the institutional level, including "sensitive issues" where "the inmate reasonably believes the issue is sensitive and the inmate's safety or well-being would be placed in danger if the Request became known."  28 C.F.R. § 542.14(d).  However, if the Regional Director does not agree that the Request is sensitive, the inmate is advised of that of that determination and may resubmit the Request by filing a BP-9 with the Warden.  In such a case, the final step is still filing a BP-11 with the National Director, National Inmate Appeals.  28 C.F.R. § 542.15(a).

The Tenth Circuit has found that an inmate must appeal his grievance through all available channels to exhaust his administrative records fully.  See Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002) ("An inmate who begins the grievance process but does not complete it is barred from pursuing a . . . claim under PLRA for failure to exhaust his administrative remedies." ).  There is, however, a recognized exception to the requirement when an inmate has been prevented from filing a grievance.  See id. "When prison officials block a prisoner's access to the grievance process, the administrative remedies are not 'available' to the prisoner and, therefore, do not need to be exhausted prior to initiation of [an] . . . action."  Main v. Martin, 2009 WL 215404, *5 (D. Colo. Jan. 22, 2009).

Here, defendants have shown that plaintiff did not exhaust his administrative remedies prior to the commencement of this action.  Defendants have submitted the Declaration of Benjamin J. Brieschke, Senior Attorney at the BOP at the Federal Correctional Complex ("FCC") in Florence, Colorado, and documentation which show

the following.  Plaintiff's Administrative Remedy record shows that plaintiff has filed a

total of 32 administrative remedies filings comprised of remedies at all levels (BP-9, BP-

10, and BP-11).  (Brieschke Aff., Docket No. 36-1 at 4, ¶ 15).  Out of those 32 total

filings, only two were at the National Level (BP-11).  (Docket No. 36-1 at 4, ¶ 15).  The

first was filed while plaintiff was in Lewisburg in 2008, which was three to four years

prior to the conduct alleged here.  (Brieschke Decl., Docket No. 35-1 at 5, ¶15; AR No.

493609).  The other remedy filed at the BP-11 level was filed and rejected <u>after</u> this

action was commenced and concerned plaintiff's request to be transferred rather than

the claims at issue here.  (AR No. 764691, filed on April 1, 2014).  Furthermore, plaintiff

filed only one administrative remedy while he was confined at FCI Englewood (AR No.

715569), which he filed with the Regional Office on December 10, 2012, as a "sensitive

issue."  (Docket No. 36-1 at 5, ¶ 16).  In that Remedy, plaintiff alleged "Staff

Misconduct."  That Remedy was rejected on the same day because it was determined

that the issue he raised was not sensitive, and thus plaintiff was required to submit this

concern at the facility level first.  Plaintiff, however, never re-filed that Remedy.

Inasmuch as defendants' motion is properly supported, the burden shifts to the

plaintiff to show, by tendering competent evidence, that summary judgment is not

proper.  In his "Objection" to the original motion for summary judgment (Docket No. 29),

plaintiff claims that he "was under no requirement to use internal grievance procedure

for crime of sexual abuse being committed against him.  In fact he and Inmate Sanchel

[sic] did report crime to authorities simultaniously [sic] and sent out letters to 'Office of

Inspector General" on the same night."  (Docket No. 29 at 1).  He claims he "has shown

by sworn testimony that involved witnesses that he reported this incident non-stop from

13

Englewood FCI through Oklahoma Tranist [sic] Center untill [sic] CCA Facility in Ohio."
(Docket No. 29 at 2).

Plaintiff, however, has made no showing that the administrative remedy process
need not be followed here.  Furthermore, he has made no allegation, let alone a
showing by competent evidence, that he properly submitted his claim through all of the
steps the requisite administrative remedy process prior to commencing this action.
Given the number of administrative remedies at all remedy levels plaintiff has filed while
in the BOP, plaintiff knows the administrative remedy process, yet he failed to follow
that process with respect to his claims here.  Plaintiff's decision to follow alternative
informal methods of complaining to prison staff and officials (i.e., his purported letters to
the OIG, the SIS, and the Warden and verbal complaints to various staff) does not
render the BOP's administrative remedies unavailable and does not constitute a basis
for exhaustion.  See Crosby v. Nelson, 2013 WL 386612, at *2 & n.4 (D. Colo. July 26,
2013) (prisoner's decision to pursue his claim under the FTCA did not render the BOP's
administrative remedies unavailable, and his informal requests to the warden and
operations warden were not part of the BOP's official grievance process and thus did
not constitute a basis for exhaustion); Rounds v. Corbin, 2006 WL 1832680, at *8 (D.
Colo. June 30, 2006) ("Writing a letter to the Inspector General's office . . . do[es] not
satisfy the requirement that plaintiff exhaust the remedies provided by the . . . grievance
procedure.").  "[T]he doctrine of substantial compliance does not apply" to PLRA
exhaustion.  Jernigan, 304 F.3d at 1032.  Furthermore, plaintiff has made no showing
that prison officials prevented, thwarted, or hindered his efforts to avail himself of the
administrative remedy process.

14

This court thus finds that  the record supports the affirmative defense that plaintiff did not properly exhaust his available administrative remedies as to his claims against the defendants.  Even viewing the evidence in the record in a light most favorable to plaintiff and drawing all inferences in his favor, the court concludes that plaintiff's arguments do not support the existence of any genuine issue of fact.  Defendants are thus entitled to summary judgment on plaintiff's claims due to plaintiff's failure to exhaust administrative remedies.

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that Defendants' Amended Motion for Summary Judgment (Docket No. 36) be **granted**, and this case be dismissed without prejudice based upon the plaintiff's failure to exhaust his available administrative remedies prior to bringing this action.  It is thus further

**RECOMMENDED** that Defendants' Motion for Summary Judgment (Docket No. 22) and Defendants' Motion to Dismiss  (Docket No. 23) be **denied as moot**.

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case.  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  The District Judge need not consider frivolous, conclusive, or general objections.  A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, Thomas v. Arn, 474 U.S. 140, 148-53**

15

(1985), and also waives appellate review of both factual and legal questions.

**Makin v. Colorado Dep't of Corrections,** 183 F.3d 1205, 1210 (10th Cir. 1999); **Talley**

**v. Hesse,** 91 F.3d 1411, 1412-13 (10th Cir. 1996).


Date:  July 28, 2014                          s/ Michael J. Watanabe
       Denver, Colorado                       Michael J. Watanabe
                                              United States Magistrate Judge